MASTERSON v. HARRINGTON et al.

(Court of Civil Appeals of Texas. El Paso. March 7, 1912. Rehearing Denied March 27, 1912.)

1. Lost Instruments (§ 8*)—Claim of Title.

The execution of a power of attorney by the person claimed to be the grantor in an ancient and lost deed, authorizing the bringing of suit for any and all lands to which he was entitled by inheritance or purchase in the state of Texas, is not an active assertion or claim of title to the particular tract which will rebut the presumption of the lost grant.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. § 17; Dec. Dig. § 8.*]

2. Lost Instruments (§ 8*) — Opposing Claim—Claim of Title.

Where, upon a judgment against the grantor in an alleged ancient and lost deed, there was an execution and sale to the grantee in such deed of the right, title, and interest of the grantor in an entire three leagues out of which the parcel in suit was claimed to have been carved by the lost instrument, the execution and sale are not evidence of an assertion of a claim of title to the particular land which will rebut the presumption of the lost grant.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. § 17; Dec. Dig. § 8.*]

3. Lost Instruments (§ 9*)—Question for Jury.

A conveyance of realty may be established by circumstances; but whether such circum-

stances will support the presumption of a lost grant is for the jury.

[Ed. Note.—For other cases, see Lost Instruments, Dec. Dig. § 9.*]

4. LOST INSTRUMENTS (§ 8*)—EVIDENCE.

In trespass to try title, evidence *held* to support a finding that there was a lost grant to the predecessors in the interest of the defendant.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. § 17; Dec. Dig. § 8.*]

5. APPEAL AND ERROR (§ 742*) — RECORD — ASSIGNMENTS OF ERROR—PROPOSITIONS AND STATEMENTS.

Error assigned to the uncertainty of a verdict will not be considered, where the facts which create the uncertainty are not called to the attention of the court by a statement under the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. VENDOR AND PURCHASER (§ 229*)—TITLE OF PLAINTIFF—INNOCENT PURCHASER.

Where a plaintiff in trespass to try title was charged with constructive knowledge of the adverse claims of the defendants when he purchased, and he secured a very large tract of land for a comparatively nominal sum, he could not be considered an innocent purchaser, in good faith, for a valuable consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

Peticolas, C. J., dissenting.

Appeal from District Court, Harris County.

Trespass to try title by H. Masterson against Sarah Harrington and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Rowe & Doughty, Masterson, Atkinson & Masterson, J. O. Davis, and Anselm H. Jayne, for appellant. Tharp & Whitehead, for appellees.

HIGGINS, J. Appellant filed suit in the district court of Harris county against appellees in trespass to try title, seeking to recover certain land out of the Victor Blanco five-league grant in said county.

In 1835 title to three leagues in the lower part of the Victor Blanco grant was vested in Lorenzo De Zavalla, Jr.; the premises in controversy herein being a part thereof. Appellant claims title by regular chain from De Zavalla, and defendants claim title under numerous duly recorded conveyances originally emanating from Emily Hand. Appellees contend that the premises in controversy were, in fact, conveyed by De Zavalla to Emily Hand by deed conveying 2,000 acres of land. There is no direct evidence of such a deed; but appellees rely upon facts and circumstances to evidence the presumption that such a conveyance was, in fact, executed.

The case was tried before a jury, and the sole question submitted to the jury for their determination was whether or not, from all the facts and circumstances in evidence,

there was at some time such a deed executed by De Zavalla to Emily Hand, which issue the jury answered by stating, "We find that there was a deed made to 2,000 acres of the Victor Blanco grant by Lorenzo De Zavalla, Jr., to Emily Hand," upon which verdict judgment was accordingly rendered by the court in favor of appellees.

The gist of the various propositions urged by appellant under the first assignment of error is that the evidence was insufficient to warrant the court in submitting such an issue to the jury, and that the evidence is insufficient to support the jury's finding that there was such a deed.

In 1850 George Young, under whom the appellees claim, bargained with Emily Hand and her husband for the 2,000 acres of land, which, it is contended, was conveyed by De Zavalla to Emily Hand by lost deed. Young placed a loghouse thereon and a man in possession thereof, who held possession until 1852, when the Young family moved upon the land, and on January 15, 1854, Emily Hand and husband conveyed the same to Young by deed, which was duly recorded. Geo. Young and his wife cultivated and improved the land and lived thereon until his death in 1862, and thereafter the surviving wife resided upon the land with her children until she died in 1872, cultivating part thereof. The family burying ground of the Young family was upon the land, and Young and his wife were both buried thereon, together with a number of his children and other descendants. In 1865 the land was partitioned, the surviving wife, Lucy Young, receiving the southern portion, and the remainder was divided into eight parts and awarded to the eight heirs of George Young. Some of the heirs had settled upon portions of the land prior to the partition, to wit, Amanda Harrington, Harriet McDonald, and Ann Rankin. Amanda Harrington died, and her surviving husband, James Harrington, married another one of the Young heirs, and they resided upon and cultivated portions of the land owned by them until 1890; and since that time and up until 1902 they continued their possession and use through tenants. Alex McDonald, son of Harriet McDonald, was born on the Young tract in 1860, and resided there with his parents until 1872, during which time the McDonalds had possession of their portion of the land, cultivating and using the same, with improvements thereon, consisting of houses, orchards, and fields. The Rankins resided on the land a number of years, and others, claiming under them, continued to reside there for many years. Possession of the other portions of the land awarded to the other Young heirs was held by them, and the heirs of George and Lucy Young paid taxes on the land, and upon trial tax receipts were introduced in evidence, begin-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

ning with 1866 and covering most of the years from that date until the filing of the suit, showing payment of taxes by them.

It appears that Lorenzo De Zavalla, Jr., at an early date, removed to the state of Yucatan in the republic of Mexico, and on August 18, 1896, executed to J. O. Davis power of attorney, authorizing the said Davis to sue for and recover any and all lands in the state of Texas to which he was entitled by inheritance or purchase, granting unto the said Davis an undivided one-half interest in the land.

On March 31, 1877, Emily Hand and eight other plaintiffs recovered a judgment against De Zavalla in the sum of $1,700 in the district court of Harris county, Tex., upon which execution was issued, which, upon May 3, 1877, was levied upon the entire three leagues of land owned by De Zavalla in the Victor Blanco grant, under which execution and levy the land was conveyed by the sheriff on June 5, 1877, to Emily Hand and four others, an undivided one-half interest passing by the deed to said Emily Hand, and thereafter, in the year 1880, Emily Hand and others conveyed to the said De Zavalla by quitclaim deed all their right, title, and interest in and to said three leagues. There appears to have been no active claim to the Young land asserted by Lorenzo De Zavalla from 1841 to the filing of the suit, nor payment of any taxes by him.

[1-3] We do not regard the execution of the power of attorney by De Zavalla to Davis as an active assertion or claim of title to any particular tract of land; nor do we regard the issuance of the execution as evidencing an active claim of title by him, nor its levy and the sale of the land thereunder. The execution was levied upon the right, title, and interest of De Zavalla in and to the entire three leagues, and did not have reference to the particular 2,000 acres which, it is contended, was conveyed by a lost deed many years prior to that time. The fact that it was bought in by Emily Hand and others in 1877, and their right, title, and interest in the three leagues afterwards reconveyed by them to De Zavalla, does not militate against the presumption that there may have been a deed to the particular 2,000 acres claimed by the Youngs out of the three leagues by virtue of the contract made with Emily Hand in 1850, followed up by a conveyance by her in 1854. Under the decisions of our courts, it would seem that long-continued use and possession alone is sufficient upon which to base the presumption that a deed was, in fact, at some time executed covering the land. In Taylor v. Watkins, 26 Tex. 688, it appeared that the plaintiff relied solely upon long possession in support of the presumption of a grant from the state to herself. The court

says that conveyances between private individuals are more readily presumed than are grants from the crown or state; but in that case, although it was a grant from the state which, it was contended, had been made, the court held that long-continued possession was sufficient to warrant the submission to the jury of the question of whether or not a grant had in fact been made; Judge Bell stating "that the presumption of a grant does arise from long and uninterrupted possession, where the possession is consistent with the presumption, and that the jury may properly be told this much as a matter of law." In Herndon v. Vick, 89 Tex. 469, 35 S. W. 141, the court rejected the contention, recognized in other jurisdictions, that the inference arising from long possession and enjoyment of real estate, together with corroborating circumstances, may be so cogent as to make it the duty of the court to instruct the jury to presume a grant, and held that in this state the presumption was one of fact, and it was for the jury to determine the effect of the evidence in support of that presumption. It is clear from the opinion of Chief Justice Gaines in that case that the court recognized the correctness of the principle that the presumption of a grant might be founded upon long possession and use, together with corroborating circumstances. Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581, is another branch of Herndon v. Vick, supra, and was decided by the San Antonio Court of Civil Appeals, and a writ of error denied by the Supreme Court. In that case, the presumption of a deed was upheld, based upon long-continued use and possession, accompanied by nonclaim upon the part of the plaintiff in the case. In the case of Carlisle v. Gibbs, 44 Tex. Civ. App. 189, 98 S. W. 192, the authorities upon this subject were reviewed by Judge Fly, and from the authorities he deduced the rule, as follows: "The effect of the authorities cited, as well as others, is to establish the rule that a conveyance of real property may be established by circumstances, such as long possession and enjoyment of it, and that such circumstances must be submitted to the jury to be determined by them whether or not they will support the presumption or inference of a grant or conveyance; in other words, that such circumstances may create a presumption of fact, but not a presumption of law." See, also, Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015; Houston Oil Co. v. Kimball, 114 S. W. 662; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033.

[4] The majority of the court is of the opinion that the finding of the jury in support of the presumption of a conveyance to Emily Hand by De Zavalla of the 2,000 acres of land is supported by the long-con-

tinued use and possession of the land, as above stated, by the Youngs and those claiming under them, under numerous recorded deeds, accompanied by the payment of taxes by them, and no assertion of claim of title thereto upon part of De Zavalla up until the time of the filing of this suit.

By his third assignment of error, appellant questions the correctness of that portion of the court's charge which reads as follows: "The plaintiff claims that there never was any deed made from Lorenzo De Zavalla to Mrs. Hand, and that there is no sufficient evidence to justify the presumption of such a deed in view of all the testimony in the case relating to the sale of the 980 acres to Andrews and the recitals in the deed of Mrs. Hand to George Young." It is urged that this paragraph is upon the weight of the evidence, and the effect of it is to limit the jury in its consideration of all the facts relied upon by appellant to rebut the presumption of a deed. Considering the charge as a whole, and in connection with the evidence before the jury, it is not subject to the objections urged.

[5] The fourth assignment cannot be considered. It is not followed by any statement by which this court can determine whether or not the verdict is uncertain. If it is uncertain, it is so because of facts not called to our attention; and we will not search the entire record to ascertain if this contention is well founded.

[6] By the seventh assignment of error, appellant complains of the refusal of the trial court to submit to the jury the question of whether or not Masterson was an innocent purchaser of the land in controversy, in good faith, for a valuable consideration. This assignment is overruled. Under the undisputed facts, Masterson was charged with constructive knowledge, at least, of adverse claims to the land; nor does it appear that he was a purchaser for value. From the evidence, it appears that he was a purchaser of a very large tract of land for a comparatively nominal sum of money, and under the facts indicated the court did not err in refusing to submit to the jury the question of whether or not he was an innocent purchaser for value.

The objection made to the admissibility in evidence of the deed from Emily Hand to George Young, because of the defective acknowledgment, is not well taken. See McDannell v. Horrell, 1 Posey, Unrep. Cas. 521.

The court did not err in excluding the decree and papers in the case of John H. Harrington et al. v. Masterson, No. 35,412, in the district court of Harris county, complained of in the thirteenth assignment.

What has been stated above disposes of all questions raised by most of the various assignments of error, except some assignments which appellant states he desires the court to pass upon in the event only the court is otherwise of the opinion that the case should be reversed. The questions presented by assignments not specifically discussed are regarded as being without merit, and are overruled without comment.

The judgment is, in all things, affirmed.

PETICOLAS, C. J. (dissenting). I find myself unable to agree to the conclusion of the majority of the court that the circumstances in this case were sufficient to submit to the jury the issue as to whether there was a deed executed from De Zavalla to Emily Hand. I have no doubt, however, that it is the law in this state that a conveyance of real property may be established by circumstances; but it seems to me that before such circumstances are sufficient to submit to the issue of such conveyance they must be such as that no other reasonable presumption could be drawn from them than that there was a deed. To illustrate more clearly my point, we may arrive at it in this way: The statutory law of limitation is but a declaration by statute that, given possession for a certain length of time, with certain acts of ownership, a grant will be presumed. I can see that there might be circumstances, not dependent in any way on possession, which would clearly and directly indicate that there had been a deed; but to hold broadly that mere possession for an indefinite length of time, not sufficient under the statutes of limitation, is sufficient to raise a presumption of a deed is, to my mind, unsound.

The case of Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033, perfectly illustrates my idea. In that case, the deed sought to be proven by circumstantial evidence was indicated by a letter from the land agent to the grantee, saying, in effect, that he had about closed up the trade for sale of the land to the grantee, that he would need certain other money to pay for it with, and an item from an account book kept by the grantee, showing that he had sent the money. It was held these circumstances were sufficient to submit to the jury on the issue of whether or not such deed was made; and it is evident that the holding was correct. Here were circumstances which directly indicated that the deed had been made. I can conceive, also, that there might be circumstances under which mere possession by one party, with lack of claim by the other party, would be sufficient evidence to submit an issue to the jury whether a deed was made from one to the other; but I do not find circumstances in this case which I believe sufficient, under the decision, to have submitted such an issue on. To state it briefly, in 1835 title to three leagues was vested in Lorenzo De Zavala, Jr.; in 1850 George Young bargained with Emily Hand and her husband

for 2,000 acres of these three leagues. Young placed a loghouse thereon and a man is in possession; in '52 Young moved upon the land; in '54 Emily Hand and husband conveyed the same to Young by deed. Lorenzo De Zavalla, at an early date, moved to the state of Yucatan, in the republic of Mexico; the only testimony as to whether or not he still laid claim to the land was negative in its character; one of two witnesses stating that they had never heard of any claim by him to the land. In '77 Emily Hand recovered a judgment against De Zavalla, issued execution, and levied it upon the three leagues of land above described. Under the execution and levy, the land was conveyed by the sheriff, in '77, to Emily Hand and others. In 1880 Emily Hand conveyed to De Zavalla by quitclaim all of her right, title, and interest. It seems to me that these two transactions tend to rebut any presumption that there had formerly been a deed from De Zavalla to Emily Hand, and the mere fact that De Zavalla acquires his title back from Emily Hand tends to show that he was claiming the land. In 1896 he executed a power of attorney to one Davis to sue for and recover all lands of his in the state of Texas. I think the case lacks entirely the element of absolute nonclaim by De Zavalla, and I think, when we consider that De Zavalla was away for long years in Yucatan, that in the nature of things there might be an apparent lack of claim by him; that the testimony is totally insufficient to presume that, because the Youngs (not Emily Hand) were in possession, and because De Zavalla, who was away, was not actively asserting his rights, the only presumption which could arise was that he had conveyed the land to Emily Hand. We have here no circumstances of any nature directly tending to show a deed from De Zavalla to Emily Hand. We have possession by Emily Hand's grantees, continued for long years, and it seems to me the true test is, Was this possession sufficient under the statutes of limitation? If it was not, the mere fact of occupancy, on the one hand, absence and nonactive assertion of title, on the other hand, is not in my judgment, especially when coupled with Emily Hand's attempt to acquire later the title, sufficient to have submitted the issue to the jury of whether or not a deed was made from De Zavalla to Emily Hand; if it is, as the opinion of the majority indicates, it seems to me a very dangerous doctrine, one which, in effect, wipes out the statute of limitation, which enables almost any case, on any state of facts, to be submitted to a jury to inquire whether they think or can imagine that there may have been a deed between the parties.

For the reasons indicated, I am unable to agree with the opinion of the majority in this case.